**In re Michael H. DITTON, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals (Bar Registration No. 436463).**

**No. 06–BG–44.**

District of Columbia Court of Appeals.

Submitted June 22, 2009.

Decided Sept. 17, 2009.

Michael H. Ditton filed a brief pro se.

Wallace E. Shipp, Jr., Bar Counsel, and Judith Hetherton and Julia L. Porter, Senior Assistant Bar Counsels, filed a brief for the Office of Bar Counsel.

Before FISHER and THOMPSON, Associate Judges, and SCHWELB, Senior Judge.

FISHER, Associate Judge:

This attorney discipline matter, which we have described as a "pairing of reciprocal and original discipline," *In re Ditton*, 954 A.2d 986, 992 (D.C.2008), is before us for a second time, following a remand for further inquiry. On this occasion we find the Board's recommendation to be fully supported by the augmented record, and we agree that Respondent should be suspended from the practice of law in the District of Columbia for five years, with a requirement that he demonstrate his fitness to practice law before he may be reinstated.

## I. Brief Background

We will attempt to avoid needless repetition, and refer the interested reader to our previous decision for background informa-

tion and more details. In that opinion we held that Respondent had not carried his burden of proving (1) that he was denied due process in the Virginia disciplinary proceedings, (2) that there was an infirmity of proof, or (3) that the imposition of identical reciprocal discipline (a five-year suspension) would result in grave injustice. 954 A.2d at 993–94; *see* D.C. Bar R. XI, § 11(c)(1), (2), (3). To the extent Respondent has raised those issues again, we will not address them.

We remanded for augmentation of the record and further consideration of three issues: (1) whether some of the conduct discussed in the Virginia proceedings would "not constitute misconduct in the District of Columbia," D.C. Bar R. XI, § 11(c)(5); (2) whether the misconduct found in Virginia "warrants substantially different discipline" than the five-year suspension imposed there, *id.*, § 11(c)(4); and (3) whether a requirement that Respondent demonstrate his fitness to practice law is supported under our standards for imposing original discipline. On remand, the parties supplemented the record with written materials, and both they and the Board on Professional Responsibility agreed that there was no need for fact-finding by a Hearing Committee.[1]

## II. Reciprocal Discipline

▮▮ It is now clear that Respondent has been convicted, not simply arrested, on separate occasions for public drunkenness and for driving under the influence. See 954 A.2d at 994. These offenses occurred more than a dozen years ago, however. Respondent was not convicted of obstruction of justice, but his behavior is described in the findings of the Virginia court, and an attorney may be disciplined for criminal conduct even in the absence of a conviction. *In re Slaughter*, 929 A.2d 433, 445 (D.C.2007) (quoting *In re Slattery*, 767 A.2d 203, 207 (D.C.2001)).[2]

▮▮ In our previous opinion we commented on the seemingly restrained finding of the Virginia Circuit Court that Respondent "has a long history of filing civil actions against numerous and various defendants on grounds that are, at best, of questionable merit." 954 A.2d at 995. On remand, the Board examined the entire record of the Virginia disciplinary proceedings, and it reports that "[r]eading the Virginia court's findings in the context of the record in that proceeding leaves us in no doubt that the Court considered Respondent's litigation to be an abuse of the legal system and that this conclusion was a substantial basis for the five-year suspension that it imposed. The Respondent's persistence in filing unfounded claims was a central focus of the proceedings." "The Virginia court would not have devoted about half of its otherwise short opinion to Respondent's litigating history if that conduct were not a substantial basis for the sanction."

---

1. The augmented record now includes, among other things, the entire record from the Virginia disciplinary proceeding; filings from litigation brought by Respondent; and portions of the record in the Montana bar admission proceeding, including a transcript of Respondent's hearing before the Commission on Character and Fitness.

2. Bar Counsel informs us that Respondent has since been convicted of two additional DUI offenses and a misdemeanor assault on an employee of the Bozeman, Montana, City Attorney's Office. *See State v. Ditton*, 333 Mont. 483, 144 P.3d 783 (2006) (affirming conviction for DUI offense which occurred in 2002); *State v. Ditton*, 213 P.3d 787 (2009) (affirming conviction for an assault which occurred in 2006); *State v. Ditton*, 349 Mont. 306, 203 P.3d 806 (2009) (affirming conviction for DUI offense which occurred in 2006). Respondent does not contest that he was convicted of these offenses, asserting only that "the Court will learn that the alleged alcohol related conduct did not impair his fitness as an attorney."

The Board's scrutiny of Respondent's litigation history has served two purposes: (1) it clarifies the findings of the Virginia court, and (2) the Board's independent assessment of that litigation history informs and supports the Board's recommendation of a fitness requirement. We will not discuss individually the other findings of the Virginia court, which are summarized in our previous opinion, 954 A.2d at 989–90, because "reciprocal discipline proceedings are not a forum to reargue the foreign discipline." *In re Zdravkovich*, 831 A.2d 964, 969 (D.C.2003). Suffice it to say that, with respect to reciprocal discipline, Respondent has not carried his burden of demonstrating, by clear and convincing evidence, that the conduct on which the Virginia authorities relied "does not constitute misconduct in the District of Columbia." D.C. Bar R. XI, § 11(c)(5).

■ Considered individually, and in isolation, these instances of misconduct might be deemed less serious than the recommended suspension indicates, but in combination they justify a lengthy period of suspension.[3] Our rules " 'create[ ] a rebuttable presumption that the discipline will be the same in the District of Columbia as it was in the original disciplining jurisdiction,' " *In re Gonzalez*, 967 A.2d 658, 660 (D.C.2009) (quoting *In re Zilberberg*, 612 A.2d 832, 834 (D.C.1992)), and Respondent has not carried his burden of showing, by clear and convincing evidence, that substantially different discipline is warranted. D.C. Bar R. XI, § 11(c)(4). We therefore

will impose the identical reciprocal discipline of a five-year suspension.

## III. Original Discipline

The Board's recommendation of a fitness requirement is based on the standard applied in original proceedings. In our previous opinion, we made it clear that Montana's decision to deny Respondent admission to its bar "does not provide a basis for imposing either reciprocal or original discipline." 954 A.2d at 992. Nevertheless, the evidence gathered in Montana (and Virginia) certainly may be considered by our Board, and it may provide a basis for original discipline if the proper standard of proof is applied.

According to the Board, "[t]he augmented record in this case clearly and convincingly gives rise to serious doubt as to Respondent's fitness to practice law, by reason of his lengthy, untreated mental illness." The Board recognized that "Respondent does not believe that he suffers from a mental illness and remains convinced that he is the victim of a wide-reaching conspiracy." Nevertheless, "[i]n separate proceedings, a psychiatrist and psychologist each testified that the allegations are delusional and the litigation is a manifestation of Respondent's illness." Moreover, based on its independent evaluation of the record, including complaints and other documents filed by Respondent, the Board concluded that "Respondent's litigation history bears the hallmarks of this condition."

---

3. In the Board's judgment, "the frivolous litigation is the dominant feature of the misconduct, making this case comparable to [*In re Shieh*, 738 A.2d 814 (D.C.1999) ]," where we imposed the reciprocal discipline of disbarment. We question whether Respondent has matched the record of frivolous and vexatious litigation compiled by Mr. Shieh, but there is no doubt that he has filed baseless litigation which has vexed his opponents and the courts he chose as forums. Contrary to Respondent's suggestions, his conduct is not protected by the First Amendment. " '[B]aseless litigation is not immunized by the First Amendment right to petition.' " *McDonald v. Smith*, 472 U.S. 479, 484, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985) (quoting *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 743, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983)).

■ In *In re Cater*, 887 A.2d 1 (D.C. 2005), we held that "to justify requiring a suspended attorney to prove fitness as a condition of reinstatement, the record in the disciplinary proceeding must contain clear and convincing evidence that casts a serious doubt upon the attorney's continuing fitness to practice law." *Id.* at 6. According to the Board, "[t]aken as a whole, the record makes it abundantly clear that Respondent suffers from a delusional disorder of a persecutory type and should be required to demonstrate fitness before he is authorized to resume the practice of law." This conclusion is amply supported by the record.[4]

### IV.  Conclusion

Respondent Michael H. Ditton is hereby suspended from the practice of law in the District of Columbia for a period of five years. This suspension is effective immediately, but for purposes of seeking reinstatement, it shall be deemed to run from the date when Respondent files an affidavit that complies with D.C. Bar R. XI, § 14(g). Reinstatement is conditioned

upon a showing of Respondent's fitness to resume the practice of law.

*So ordered.*

---

4. In a 1996 hearing on Respondent's request for a preliminary injunction, a psychiatrist who had interviewed him in 1993 testified that Respondent "suffered from a delusional disorder of persecutory type." The doctor had reviewed an affidavit recently filed by Respondent and concluded "[t]hat this is a product of that delusional disorder." When asked his opinion of Respondent's conduct in court that day and "his personal testimony," the doctor responded "[t]hat it is consistent with and a product of that mental disorder...."

A psychologist testified in the hearing before the Montana Bar's Commission on Character and Fitness, held in December 2000. Having reviewed various records related to Respondent, including the psychiatrist's report and 500 to 600 pages of complaints and other documents prepared by Respondent, he found the diagnosis of delusional disorder to

be well-supported. The psychologist also stated that "this type of thinking, unfortunately, is bound to intrude into his legal work, as it has here."

The Board also reviewed numerous court documents and other filings prepared by Respondent. *See In re DeMaio*, 893 A.2d 583, 589 (D.C.2006) (considering the content of various court filings as support for imposition of fitness requirement).

Respondent presented the report of a neurologist, who found no neurologic abnormalities in 1993. This doctor also reported that Respondent "has a normal mental status to my examination." His finding of no neurologic abnormality obviously does not rule out the possibility of mental illness, and the Board acted within its discretion in relying in this respect upon the testimony of a psychiatrist and a psychologist.