*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-BG-844

IN RE STEPHEN T. YELVERTON, Respondent.

A Suspended Member of the Bar of the
District of Columbia Court of Appeals
(Bar Registration No. 264044)

(Argued March 11, 2014                    Decided December 24, 2014)

*Stephen T. Yelverton*, pro se.

*Hamilton P. Fox*, *III*, Assistant Bar Counsel, with whom *Wallace E. Shipp*, *Jr.*, Bar Counsel, and *Jennifer P. Lyman*, Senior Assistant Bar Counsel, were on the brief, for the Office of Bar Counsel.

Before FISHER and BECKWITH, *Associate Judges*, and RUIZ, *Senior Judge*.

RUIZ, *Senior Judge*:  This case requires us to consider whether and how to sanction an attorney for a pattern of repetitive frivolous filings.  Before us is a recommendation from the Board on Professional Responsibility ("Board") that we find that respondent Stephen T. Yelverton violated Rules of Professional Conduct 1.1 (a), 1.1 (b), 3.1, and 8.4 (d) in his representation of a witness in a criminal trial. The Board recommends a ninety-day suspension and imposition of a fitness requirement as a condition of reinstatement.  We conclude that respondent's actions did not violate Rules 1.1 (a) or (b), which require professional competence

in the representation of clients, as there was no harm to the client. However, we agree with the Board's determination that respondent violated Rules 3.1 and 8.4 (d), which forbid attorneys from making submissions to the court that are not well-grounded in law and fact, and engaging in conduct that seriously interferes with the administration of justice. We do not adopt the Board's recommendation that respondent be suspended for ninety days, and instead order a thirty-day suspension. We also add a requirement, as recommended by the Board, that respondent demonstrate fitness to practice before he may be reinstated to the practice of law.

## I. Facts

## A. Respondent's Actions Leading to Bar Counsel's Investigation

Respondent, a member of the bar of this court since 1979, represented the complaining witness in a criminal assault case.[1] Following a bench trial held in August 2009, the judge credited the defendant over the complaining witness, and acquitted the defendant of the assault. Because the judge did not credit the complainant's testimony, and because respondent believed that defense counsel Kirk Callan Smith had told the judge that respondent's client was "a liar,"

---

[1] During trial, defense counsel subpoenaed certain of the complaining witness's financial records. Respondent, who represented the witness, moved to quash the subpoena and the court ultimately denied enforcement of the subpoena.

respondent became concerned that his client could face prosecution for perjury on the basis of his testimony in the criminal trial. These concerns led respondent to take the unusual step of seeking a mistrial and a new trial in the assault case, which the court denied on September 16, 2009. In its denial of the motion, the court explained that the defendant's constitutional right to be free from double jeopardy, once she was acquitted, barred a retrial.

Undaunted, respondent initiated a number of motions during the next four months. On September 23, respondent first moved to vacate the order denying the mistrial motion and to impose sanctions on defense counsel for, among other things, violating the Rules of Professional Conduct. Two days later, the trial court denied respondent's motions, calling them "frivolous."[2] Respondent then moved, on October 5, to vacate that denial, again asking the court to sanction defense counsel and to order him to "cease and desist from using [c]ourt processes to harass [the complaining witness]." That same day, respondent also moved to recuse the trial judge from the case, accusing him of harboring bias against his client and engaging in *ex parte* communications with the prosecutor. On

---

[2] With respect to the motion for sanctions, the trial court's order noted that "the appropriate venue for complaints regarding an attorney's conduct and alleged violations of the D.C. Bar Rules of Professional Conduct is to refer the matter to Bar Counsel."

November 2, respondent filed another motion to recuse, this time accusing the judge of *ex parte* communications with defense counsel. Defense counsel, for his part, also moved to sanction respondent and his client for abusive and unethical conduct. Although each new motion in this flurry was in some respect different from the last, each of respondent's submissions also included lengthy passages copied verbatim from previous motions, and frequently included the same affidavits. Whenever defense counsel opposed respondent's motions or sought additional time to respond to them, respondent moved both to strike those filings and to reply to them. On March 15, 2010, the trial court issued an order denying all of respondent's motions, characterizing the motions to recuse as "wholly without merit," and the rest of his motions as lacking in legal or factual support. Although the trial court characterized both parties' submissions "in the kindest phrasing, [as] lengthy, repetitive, and rather casually styled," the order concluded that "[n]o relief in the form of sanctions for either party need, or will, be addressed by the court."

Respondent then timely appealed the trial court's denial of his multiple motions to this court. The defendant moved to dismiss the appeal and requested sanctions against respondent. This court dismissed the appeal, citing cases in support of the well-established proposition that the victim of a crime lacks standing

to appeal in criminal proceedings, and denied the motion for sanctions against respondent. Respondent's subsequent petitions for rehearing and rehearing *en banc* of the dismissal of his initial appeal were denied. Many filings later, we issued the following order *sua sponte*:

> [T]he conduct of counsel for both appellant . . . and cross-appellant . . . raise serious concerns as to the propriety of actions taken and judgment exercised by both and the matter is hereby referred to Bar Counsel for investigation in that regard.

**B.     Bar Counsel's Investigation and Hearing Committee Proceedings**

Acting on the court's referral, Bar Counsel investigated and ultimately charged respondent with violations of four Rules of Professional Conduct: Rule 1.1 (a) and (b) (competence), Rule 3.1 (meritorious claims and contentions), and Rule 8.4 (d) (misconduct).

In his response and supplemental response to Bar Counsel's Specification of Charges, respondent denied all charges against him. He also argued that Assistant Bar Counsel assigned to his case, Hamilton P. Fox III, should be disqualified because he had brought an unrelated civil suit against the District of Columbia, and that an independent counsel should be appointed to investigate ethics charges

against defense counsel Smith. Respondent asked the Board to investigate Bar Counsel's actions and to dismiss the charges against him.[3] Respondent also sought to remove the bar disciplinary proceedings to federal district court claiming that his constitutional rights were imperiled. *See Yelverton v. Fox*, 997 F. Supp. 2d 1, 3 n.2 (D.D.C. 2013). When the removal request was dismissed for lack of jurisdiction, respondent appealed. The appeal was rejected. *Id.*; *In re Yelverton*, 2012 U.S. App. LEXIS 1715 (D.C. Cir. Jan. 30, 2012), *cert. denied*, 133 S. Ct. 332 (2012). Throughout, respondent continued to defend his actions in the Superior Court seeking a mistrial in the criminal assault case.

On August 24, 2012, following a hearing, the Ad Hoc Hearing Committee recommended dismissal of the charges, concluding that respondent had mistakenly—but sincerely—believed that his post-trial motions on his client's behalf would be effective to protect the client from a perjury charge. One committee member dissented, saying that he would have found violations of all four rules and recommended a thirty-day suspension and a fitness requirement.

---

[3] Respondent filed three motions with the Board: (1) a demand that the Specification of Charges be withdrawn and for an investigation of Bar Counsel, (2) a request for extraordinary relief to prohibit Bar Counsel from proceeding against him, and (3) an "extraordinary request" for dismissal with prejudice based upon newly discovered allegations of misconduct by the Office of Bar Counsel. All were denied by the Board.

The Hearing Committee majority thought that it was a decisive consideration that respondent's errors did not prejudice his client. It also considered that respondent's many filings, though annoying, were unlikely to have seriously overburdened judges, were not filed with an intent to harass any party or to cause delay, and that the trial judge opted not to sanction respondent in the criminal case.[4] Bar Counsel and respondent both filed exceptions to the Hearing Committee Report.

## C. Report and Recommendation of the Board on Professional Responsibility

A hearing was held before the Board on November 29, 2012. Respondent's motions after argument led the Board to issue an order on February 5, 2013,

---

[4] According to the Hearing Committee majority:

> [W]hat we have is a lawyer who represented his client with vigor and dedication in a manner that was doomed from the outset. The question presented, however, is whether a degree of ineptitude alone, absent any other inappropriate actions and no evidence of actual harm to his client or to the judicial system, warrants a permanent blot on a lawyer's career after that lawyer has been in practice for more than 30 years without having exhibited ethical lapses.

The dissenting member, however, characterized respondent as an "unending source of meritless and vexatious litigation."

prohibiting further filings. On July 30, 2013, the Board issued a Report and Recommendation to this court. The Board adopted the Hearing Committee's factual findings but rejected its legal conclusions, concluding instead that respondent violated all four rules as charged by Bar Counsel. It recommended a ninety-day suspension (as opposed to the dissenting Hearing Committee member's recommended thirty-day suspension) and imposition of a fitness requirement as a condition to reinstatement following suspension.

Respondent immediately filed exceptions to the Board's report with this court; Bar Counsel took no exception. Three weeks after the Board submitted its report, respondent filed suit in the United States District Court for the District of Columbia, naming Assistant Bar Counsel, the Board's Executive Attorney, and the Clerk of this court as defendants, seeking a preliminary injunction to stay the Board's Report and to enjoin this court from suspending him. The federal court denied the preliminary injunction. *See Yelverton*, 997 F. Supp. 2d at 2. On September 12, 2013, respondent was suspended from practicing law in the District of Columbia pending the court's final action on the Board's recommendation.[5]

---

[5] When the Board recommends discipline in the form of disbarment, suspension requiring proof of fitness as a condition of reinstatement, or any suspension of one year or more, this court must enter an order suspending the attorney from the practice of law in the District of Columbia pending final action

(continued . . .)

Pursuant to the court's briefing schedule, respondent and Bar Counsel filed their briefs with the court in October 2013. In the months that followed, respondent filed six motions with this court, some of which were largely verbatim copies of previously submitted filings. He moved to void his interim suspension as "a legal nullity" on the theory that it was based on "off-the-record" accusations about his political beliefs and was therefore in violation of his due process rights. He filed a Demand for Recusal of Bar Counsel Senior Staff Attorney Lawrence Bloom from involvement in respondent's case, on the ground that he and respondent used to work together. He also filed a motion and supplemental motion requesting that every judge on this court be recused from this case for bias "based upon prejudgment."[6] All of these motions were denied by this court's order of

---

(. . . continued)
on the Board's recommendation unless the attorney can show cause why this court should not order temporary suspension. *See* D.C. Bar R. XI, § 9 (g). Respondent filed a response to the order to show cause and requested en banc review by the court on the ground that any sanction against him based on actions taken in defense of a client in court is absolutely barred by the First Amendment. This argument is repeated in respondent's brief. See note 8 *infra*.

[6] Respondent's motion to disqualify the judges of this court argued that the disciplinary proceedings violate his due process rights because the court (1) is acting both as prosecutor and judge, and (2) refuses to exempt him from disciplinary sanction and is instead retaliating against him for "publicly exposing fraud and corruption" by the defense attorney and trial judge in the criminal case. On the first point, respondent asserted that Assistant Bar Counsel Fox had represented to the federal court in respondent's action seeking federal court intervention in this disciplinary proceeding that the D.C. Court of Appeals (not

(continued . . .)

December 13, 2013. The court also *sua sponte* ordered respondent to stop submitting motions and pleadings in this case without leave of the court. Subsequent to that order, respondent has filed additional submissions (most seeking leave) to remand this case to the Hearing Committee, to give notice of his reservation of constitutional claims for resolution by the U.S. District Court, to provide citations to supplemental authority, to request that the court take judicial notice of various proceedings in other courts, and to refer a new matter, an order of the U.S. District Court, to the Hearing Committee for an initial determination of the facts he disputes in that order. Respondent's motions have been either returned for failing to comply with the December 13, 2013, order or denied.

---

(. . . continued)

defense counsel, as respondent alleged) was the true complainant in the Specification of Charges. What Assistant Bar Counsel had represented, accurately, is that the court had referred respondent's conduct to Bar Counsel for investigation. It is Bar Counsel, not the court, who presents and prosecutes the Specification of Charges. See D.C. Bar R. XI, §§ 6 & 8. There are several layers of procedural requirements and proceedings before a disciplinary matter comes before the court for ultimate resolution. *Id.* at §§ 8 & 9. At each stage, Bar Counsel has had the burden of proof and respondent has had the opportunity to participate in the proceeding. At this final step of the disciplinary proceeding, before the court, the Board has presented its findings, conclusions and recommendation in a written report and respondent has responded in writing and in oral argument.

With respect to the second point, the disciplinary proceedings are based on respondent's conduct evidencing professional incompetence, not his alleged whistleblowing. As we explain, see note 8 *infra*, respondent's conduct in violation of ethical rules is not exempted from sanction.

## II.    Standard of Review

When we consider the Board's Report and Recommendation, we "must accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record, and shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted."  D.C. Bar R. XI, § 9 (h)(1); *see In re Pye*, 57 A.3d 960, 962 (D.C. 2012) (quoting *In re Cleaver-Bascombe*, 986 A.2d 1191, 1194 (D.C. 2010)); *In re Hewett*, 11 A.3d 279, 284-85 (D.C. 2011).  However, "[w]hether the Board's determinations are characterized as findings of ultimate fact or conclusions of law, we owe them no deference; our review is *de novo*."  *In re Cater*, 887 A.2d 1, 12 (D.C. 2005).  A "finding of ultimate fact" in this context is a finding that respondent's conduct violates a specific rule of professional conduct, rather than a factual finding about the underlying conduct that is alleged to constitute the offense. *See id.* at 12.[7]

---

[7] The court defers to the Board's findings of historical fact and credibility determinations.  *See In re Lea*, 969 A.2d 881, 889 (D.C. 2009) (citing *In re Micheel*, 610 A.2d 231, 234 (D.C. 1992)).

### III.   Rule Violations[8]

---

[8]   Respondent raises two preliminary defenses that we decide succinctly. Respondent first argues that his "filings are allowed under the *Noerr-Pennington* Doctrine, which absolutely bars Sanction in civil matters seeking access to Courts to vindicate grievances."  *See Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657 (1965).  He contends that sanctioning actions taken in civil court on behalf of a client violates the First and Fifth Amendments, citing *Nader v. Democratic Nat'l Comm.*, 567 F.3d 692, 696 (D.C. Cir. 2009), and *United States v. American Tel. & Tel. Co.*, 524 F. Supp. 1336, 1363-64 (D.D.C. 1981).  But respondent's reliance on *Noerr-Pennington* is mistaken.  We have said that "baseless litigation is not immunized by the First Amendment Right to Petition."  *In re Ditton*, 980 A.2d 1170, 1173 n.3 (D.C. 2009) (quoting *McDonald v. Smith*, 472 U.S. 479 (1985) (holding that First Amendment right to petition does not preclude state action for libel requiring a showing of malice)).  Notwithstanding the finding that respondent acted with his client's interest at heart, once respondent was made aware that his motions were frivolous, their repeated assertion, to the detriment of third parties and the courts, were no longer in good faith and could be subject to reasonable sanction in order to enforce well-established standards of professional conduct. *See Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 449 (1978) (stating that First Amendment is not violated by state's imposition of discipline "under circumstances likely to pose dangers that the State has a right to prevent"); *cf. United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 225 (1967) (holding that state bar rule absolutely prohibiting union-employed attorneys from representing union members did not withstand First Amendment scrutiny where there was "not one single instance of abuse, of harm to clients, of any actual disadvantage to the public or to the profession").

Respondent further argues that "the imposition of sanctions on [respondent] for reporting to the trial court the crime of perjury by [the defendant in the criminal case] is an 'Obstruction of Justice' by defense Counsel Smith under D.C. Code §§ 22-722 (a) (2)(B), (a)(3)(B), and (a)(5) (2012)."  This argument first appears in respondent's brief, and was not brought before the Board.  Therefore, it is not properly before us.  "We have held consistently that an attorney who fails to present an issue to the Board waives it and cannot present it for the first time to this court."  *In re Artis*, 883 A.2d 85, 97 (D.C. 2005); *In re Holdmann*, 834 A.2d 887, 889 (D.C. 2003); *In re Abrams*, 689 A.2d 6, 9 (D.C. 1997); *In re Ray*, 675 A.2d

(continued . . .)

Respondent contends that Bar Counsel has failed to prove that his conduct violated any of the Rules in the Specification of Charges. We, therefore, turn to examine each of the Rules at issue and the evidence presented.

## A. Rules 1.1 (a) and (b): Competence

Rule 1.1 provides:

> (a) A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.
>
> (b) A lawyer shall serve a client with skill and care commensurate with that generally afforded to clients by other lawyers in similar matters.

Rule 1.1 is broadly worded, and as we have construed it, applies only to failures that constitute a "serious deficiency" in the attorney's representation of a client. *In re Evans*, 902 A.2d 56, 69 (D.C. 2006) (incorporating Board's statement

_____

(. . . continued)
1381, 1387 n.5 (D.C. 1996) (failing to raise an issue before the Hearing Committee constitutes waiver of the point); *In re James*, 452 A.2d 163, 168 (D.C. 1982) (no mention of the issue "in respondent's exceptions to the Board Report and Recommendation as filed in this court" constitutes waiver). In any event, neither the Board's recommendation nor this court's sanction is premised on respondent's allegations concerning the alleged perjury of the defendant in the criminal assault case.

that "[t]o prove a violation [of Rule 1.1], Bar Counsel must not only show that the attorney failed to apply his or her skills and knowledge, but that this failure constituted a serious deficiency in the representation"). A serious deficiency "has generally been found in cases where the attorney makes an error that prejudices or could have prejudiced a client and the error was caused by a lack of competence." *Id*. at 70.

We have found Rule 1.1 violations worthy of sanction only when they involve conduct that is truly incompetent, fraudulent, or negligent and that prejudices or could have prejudiced the client.[9] *See, e.g.*, *In re Carter*, 11 A.3d 1219, 1223 (D.C. 2011) (failure to attend court hearings and to file response to show-cause order that resulted in summary judgment against client; failure to make

_____

[9] In a reciprocal discipline case, we have also concluded that a pattern of hostile and bizarre filings containing false factual claims violates Rule 1.1. *See In re DeMaio*, 893 A.2d 583, 588 (D.C. 2006) (attorney violated Rule 1.1 by filing motions in Maryland proceedings alleging judge was personally interceding in the case and communicating with parties *ex parte*, that judge and court clerk had removed briefs from the case files, and demanding that judge be removed from public office). Because District of Columbia Bar Rule XI, § 11 (c) requires the court, within specified limits, to accept the disciplinary finding of another disciplinary jurisdiction as "conclusively establish[ed]" and to impose the identical sanction that the other jurisdiction has already imposed, reciprocal discipline cases are not as clear a guide to the meaning and application of our Rules of Professional Conduct as discipline cases that originate in our disciplinary system, in which the court makes an authoritative determination about whether an attorney's conduct has violated those Rules.

submission to agency that might have prevented client from being suspended at work); *In re Boykins*, 748 A.2d 413, 413-14 (D.C. 2000) (failure to provide written fee agreement and breach of duties as counsel to conservator; failure to advise client about fee to which she was entitled as conservator; failure to perceive conflict of interest between conservator and estate's heirs in attorney's joint representation of both; billing estate without the court's required approval; and "most importantly[,] fail[ure] to comply for nearly one year with the court and its agents in repaying the estate and improperly receiving fees for legal services"); *In re Sumner*, 665 A.2d 986, 989 (D.C. 1995) (where counsel was aware of risk that appeal would be dismissed, "counsel's dropping of the ball in a litigation matter through unexcused failure to make required filings, caused by his lack of competence in such matters, unquestionably violate[d] Rule 1.1").

In the case before us, the Board concluded that respondent's actions violated Rule 1.1 because (1) respondent sought a mistrial when he should have known that a new trial is impermissible once a defendant has been acquitted, and that his client, a witness in the case, lacked standing to seek a mistrial in any event; and (2) respondent's many subsequent filings exposed his client to a risk of sanctions from the Superior Court and this court. With respect to the Board's first ground, it goes without saying that respondent should have known that the motion for a mistrial by

a witness, once the defendant had been acquitted, had absolutely no chance of success.[10] *See, e.g.*, *United States v. Allen*, 755 A.2d 402, 407 (D.C. 2000) (citing *United States v. Ball*, 163 U.S. 662, 671 (1896)); *see also Davidson v. United States*, 48 A.3d 194, 205 n.17 (D.C. 2012) (noting that "acquittal terminates jeopardy"). Respondent was not experienced in criminal proceedings and should have, at a minimum, consulted someone who was knowledgeable before embarking on his misguided quest for a mistrial. In determining whether respondent's conduct violated Rule 1.1, we take into account the unfortunate fact that courts receive any number of meritless motions, claims, and arguments from members of the bar, and that the attorneys who file them are not automatically charged by Bar Counsel or sanctioned for incompetence under Rule 1.1. Respondent did not, however, simply file a meritless motion for mistrial. Bar Counsel's investigation, and the resulting charges against respondent, detail respondent's continued filings in the trial court and on appeal in pursuit of that legally unfounded strategy that led this court to direct Bar Counsel to investigate

---

[10] At the hearing, Bar Counsel's expert witness, Francis Carter, testified that respondent's representation of the complaining witness was not competent and fell "well short of the skill that other lawyers would have afforded their clients," that his motion for a mistrial was frivolous, and that there were other steps respondent could have taken if he was concerned that his client would be prosecuted for perjury.

the conduct of both attorneys in the criminal case.[11] The evidence of respondent's incompetence in this case was not of run-of-the-mill sloppiness.

On the other hand, the Hearing Committee found that respondent's actions—though legally misguided—were sincerely undertaken for the purpose of protecting his client. *Cf. In re Sumner*, 665 A.2d at 988 (noting that attorney's "abandonment of [client], coupled with his lack of experience in criminal appeals" violated Rule 1.1). Moreover, the client was not, as the Hearing Committee found and the Board accepted, prejudiced by any of respondent's filings.[12] Thus, although we agree with the Board that respondent's filings were ill-advised, meritless, and unprofessional, we do not agree that they constituted a "serious deficiency in the representation" of his client warranting sanction under Rule 1.1. *In re Evans*, 902 A.2d at 69. We see no reason to stretch this rule, intended for the benefit of the

---

[11] In deciding whether respondent has violated Rules of Professional Conduct, we consider the conduct that the Hearing Committee and the Board assessed, which is restricted to the time before we referred the matter to Bar Counsel for investigation. Respondent's subsequent filings are relevant only to our determination of sanction, in particular, whether imposition of a fitness requirement is appropriate. *See In re White*, 11 A.3d 1226, 1233 (D.C. 2011) (taking into account respondent's "attitude" and "erratic behavior" during disciplinary proceedings).

[12] The Board also found that although respondent charged the client $3,000 for his legal services, respondent "devoted approximately $20,000 of his time to his representation."

client, to sanction a lawyer's actions taken for the purpose of protecting the client that caused no actual harm and were unlikely to cause harm to the client.[13] As we now discuss, respondent's conduct—and the harm it caused—is directly addressed by other rules.

## B.      Rule 3.1:  Non-Meritorious Claims and Contentions

Frivolous, repetitive, or vexatious filings violate Rule 3.1, which provides that:

> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good-faith argument for an extension, modification, or reversal of existing law.[14]

---

[13] The only harm to the client we can envision might have been possible as a result of the filings in this case would have been the imposition of a sanction—most likely attorney's fees for the unnecessary work required of defense counsel as a result of respondent's filings. Because the filings were obviously the product of the attorney's faulty legal knowledge and research, any such sanction likely would be directed to the lawyer rather than the client. As a matter of fact, neither the trial court nor this court imposed any sanction when defense counsel asked for them. Depending on the type of subpar lawyer performance at issue, a client's rights could be forfeited or compromised, or liability established, causing real harm to the client. But that was not the case here.

[14] Rule 3.1 also provides that "[a] lawyer for the defendant in a criminal proceeding, or for the respondent in a proceeding that could result in involuntary

(continued . . .)

The language of Rule 3.1 establishes that a lawyer has a broader obligation toward the system as a whole, unlike Rule 1.1's focus on the client. In original discipline cases we have found that meritless filings and frivolous claims can violate Rule 3.1. *See, e.g.*, *In re Spikes*, 881 A.2d 1118, 1120 (D.C. 2005) (attorney's filing of defamation claim based on privileged complaint with Bar Counsel and other privileged documents violated Rules 3.1 and 8.4 (d)); *In re Pelkey*, 962 A.2d 268, 280 (D.C. 2008) (attorney's attempt to seek court's assistance to evade an arbitration agreement he had signed and misrepresentation of the trial court's ruling against him on appeal violated Rules 3.1 and 8.4 (d)).[15]

---

(. . . continued)

institutionalization, shall, if the client elects to go to trial or to a contested fact-finding hearing, nevertheless so defend the proceeding as to require that the government carry its burden of proof." D.C. Ethics Opinion No. 320 interprets this provision as requiring criminal defense attorneys to represent their clients vigorously regardless of what they know or believe about their guilt, and states that any argument for which counsel has a good faith basis—even if indirectly appealing to the jury's power of nullification—should not be deemed a violation of the Rules of Professional Conduct. Respondent relies on this ethical opinion to argue that his vigorous efforts on behalf of his client were necessary under Rule 3.1 and shield his actions from ethical sanction. However, respondent was representing the complaining witness, rather than the defendant, in a criminal proceeding, and his client was never threatened with prosecution for perjury as a result of his testimony in the criminal proceeding.

[15] We have also imposed reciprocal discipline against attorneys whose meritless filings were found to have violated rules similar or identical to Rule 3.1. *See In re Sibley*, 990 A.2d 483, 487 & 496 (D.C. 2010) (imposing three-year

(continued . . .)

The distinction between a weak claim and a frivolous or meritless one can be difficult to pinpoint, and in making that determination under the ethical rules we have relied on cases applying Superior Court Civil Rule 11[16] and our Rule 38.[17]

---

(. . . continued)
suspension and fitness requirement as reciprocal discipline to Florida's finding that lawyer made non-meritorious claims where he filed over three dozen frivolous lawsuits or appeals, twelve of which were filed against judges assigned to hear his cases); *In re Ditton*, 980 A.2d at 1173 (imposing reciprocal discipline on basis of Virginia court's conclusion that attorney's persistence in filing unfounded and delusional claims was an abuse of the court system); *In re DeMaio*, 893 A.2d at 585 (suspending attorney who violated Rule 3.1 when he filed unfounded motions alleging, among other things, that clerk of the court and chief judge were conspiring against his client and removing briefs from the case files, and requesting that chief judge be removed from the court); *In re Canatella*, 769 A.2d 142 (D.C. 2001) (imposing an eighteen-month suspension against an attorney who had repeatedly filed unfounded lawsuits in willful violation of California's counterpart to Rule 3.1).

[16] Superior Court Civil Rule 11 (b) provides that "[b]y presenting to the court . . . a pleading, written motion, or other filing," attorneys (and unrepresented parties) are deemed to certify, with respect to each filing, that "to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances:"

> (1) it is not being presented for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation;
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or for a nonfrivolous argument for the extension, modification, or reversal of existing law or establishment of new law;
> (3) the allegations and other factual contentions have . . . or are likely to have . . . evidentiary support.

Super. Ct. Civ. R. 11 (b).

(continued . . .)

*See In re Spikes*, 881 A.2d at 1125. In cases applying Civil Rule 11, we consider the "clarity or ambiguity of the law," the "plausibility of the position taken," and the "complexity of the issue" to determine whether a claim is truly meritless or merely weak. *Id.* (quoting *District of Columbia v. Fraternal Order of Police*, 691 A.2d 115, 119 (D.C. 1997)). Similarly, in applying our Rule 38, we require attorneys to make an objective appraisal of the legal merits of a position, *id.* at 1125 (citing *Tupling v. Britton*, 411 A.2d 349, 352 (D.C. 1980)), and if it is so "wholly lacking in substance" that a reasonable attorney would conclude that it is "not based upon even a faint hope of success on the legal merits," the action is frivolous under Rule 38. *Id.* (quoting *Slater v. Biehl*, 793 A.2d 1268, 1278 (D.C. 2002) (applying D.C. App. R. 38)).

Here, we have no difficulty concluding that the motion for mistrial respondent filed in the criminal case was not just weak but completely frivolous.

(. . . continued)

Courts may sanction parties or their attorneys for violations of Rule 11 (b), but monetary sanctions may not be imposed for violations of Rule 11 (b)(2), which prohibits frivolous claims. Super. Ct. Civ. R. 11 (c)(2)(A).

[17] D.C. Appellate Rule 38 provides for appropriate sanction "when . . . an attorney practicing before the court takes an appeal or files a petition or motion that is frivolous." Permissible sanctions include "dismissal of the appeal; imposition of single or double costs, expenses, and attorney's fees; and disciplinary proceedings." D.C. App. R. 38.

The law is clear and has been so for a long time. The Double Jeopardy Clause straightforwardly prohibits re-trying a person for an offense after an acquittal. *See* U.S. Const. amend. V ("nor shall any person be subject for the same offence to be twice put in jeopardy. . ."). Furthermore, respondent's client, who was not the defendant, lacked standing to seek a mistrial. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). Respondent identifies no case in which a court granted a mistrial after the defendant had been acquitted, or in which the court granted a witness's motion for a mistrial under any circumstance. The issues are not complicated, and any reasonable attorney would have recognized that there was not even "a faint hope" that respondent's motion for a mistrial would succeed. *In re Spikes*, 881 A.3d at 1125. Although respondent offers arguments that his client had standing to seek a mistrial and that jeopardy had not attached, these arguments are unsupported and do not even acknowledge that the law is firmly settled against his position.

These were not respondent's only frivolous filings. Respondent twice moved to recuse the trial judge on the basis of an affidavit from his client attesting to certain alleged facts that, respondent contended, amounted to improper *ex parte* communications between the judge and the prosecutor and defense counsel in the

criminal assault case. According to the recusal motion, these communications led the judge to disbelieve respondent's client. It is well established that judges may not communicate *ex parte* with any party in a case except under the limited circumstances spelled out in Rule 2.9 (A) of the District of Columbia Code of Judicial Conduct. Extrajudicial communication about witnesses in a pending case is especially fraught. *See In re M.C.*, 8 A.3d 1215, 1225-30 (D.C. 2010). But there was no ethical lapse apparent from respondent's motion. For even if the factual allegations contained in the affidavits submitted with the motions were true, any reasonable attorney would have recognized that they provide no reason to think the judge should recuse himself from the case.[18]

---

[18] Superior Court Civil Rule 63-I, made applicable to criminal trials by Superior Court Criminal Rule 57, provides that a judge must grant a timely motion to recuse that is duly supported by a "sufficient affidavit." The affidavits respondent filed were not sufficient, however, because they did not provide legal support for the recusal motion. The facts alleged in the affidavits on "information and belief" are that *after* the bench trial that resulted in acquittal, (1) defense counsel submitted a document to the court calling respondent's client "a liar"; (2) the prosecutor told the judge that he blamed respondent's client for the failure to secure a conviction in the case; (3) the judge refused to sanction defense counsel; and (4) because defense counsel requested additional time to file a response to one of respondent's filings seeking sanctions against defense counsel, and the docket did not show that the response was filed, it must have been filed *ex parte*. Even if every one of these factual claims were true, not one, or all taken together, provides reason to think that the judge was personally biased against respondent's client or explains why the judge did not credit his trial testimony or decide not to sanction defense counsel (or respondent for that matter).

Respondent contends that he should not be found to have violated Rule 3.1 because the Hearing Committee and Board made no finding that respondent's filings were not intended to harass any party—they were merely frivolous. It is only the objective merit of the claims, however, that is considered under Rule 3.1. *See In re Spikes*, 881 A.2d at 1125. The attorney's intent may be a matter for consideration of the appropriate sanction, but is not dispositive of the question whether an attorney's actions violate Rule 3.1.

Because respondent's motions for mistrial were patently frivolous, because he filed numerous repetitive and unfounded motions in Superior Court and in this court, and because he twice asked the trial judge to recuse himself from the case when he lacked any objective reason to do so, we conclude that there is clear and convincing evidence that respondent's actions violated Rule 3.1.

## C. Rule 8.4: Misconduct

Rule 8.4 (d) provides:

> It is professional misconduct for a lawyer to . . .
> (d) Engage in conduct that seriously interferes with the administration of justice[.]

Conduct violates Rule 8.4 (d) when it is (1) improper, (2) bears directly on the judicial process with respect to an identifiable case or tribunal, and (3) harms the judicial process in a more than a *de minimis* way. *See In re Martin*, 67 A.3d 1032, 1051 (D.C. 2013) (citing *In re Uchendu*, 812 A.2d 933, 940 (D.C. 2002)). We have found a broad range of conduct to violate Rule 8.4 (d), but violations generally involve misleading the court or misusing or obstructing proceedings in a specific case or interfering with Bar Counsel's efforts to investigate attorney misconduct. *See, e.g.*, *In re Martin*, 67 A.3d at 1051 (attorney violated Rule 8.4 (d) when he entered into an agreement that sought to prevent the client from filing complaints against him with Bar Counsel); *In re White*, 11 A.3d at 1229 (attorney violated Rule 8.4 (d) by bringing a client's discrimination complaint in federal court when she had an unwaivable conflict that disrupted, delayed, and tainted the litigation); *In re Carter*, 11 A.3d at 1223 (attorney violated Rule 8.4 (d) when he failed to respond to notices of an investigation from Bar Counsel, failed to comply with court orders requiring compliance with Bar Counsel's investigation, and lied to the court about why he had missed filing deadlines); *In re Edwards*, 990 A.2d 501, 524 (D.C. 2010) (attorney violated Rule 8.4 (d) when she failed to respond to Bar Counsel's inquiry); *In re Pelkey*, 962 A.2d at 280 (attorney violated Rule 8.4 (d), among others, when he sought the court's assistance in attempting to evade an arbitration agreement he had signed and misrepresented the trial court's ruling on

appeal); *In re Evans*, 902 A.2d at 68 (attorney violated Rule 8.4 (d) when he manipulated a probate proceeding to effect a questionable transfer of property to a client when he had a business interest in closing a mortgage on the property that was transferred); *In re Cleaver-Bascombe*, 892 A.2d at 398, 404 (attorney violated Rule 8.4 (d) when she submitted a false voucher for reimbursement from the court for her representation of an indigent defendant in a criminal case); *In re Spikes*, 881 A.2d at 1126-27 (attorney violated 8.4 (d) by filing unfounded defamation action, based on privileged communications, that required extensive briefing, impeded ongoing Bar Counsel investigation, and tied up senior attorneys of the District of Columbia government); *In re Goffe*, 641 A.2d 458, 461-62 (D.C. 1994) (attorney disbarred for violating Rule DR 1-102 (A)(5), the precursor to Rule 8.4 (d), when he knowingly submitted fabricated evidence and doctored agreements to the IRS and the Tax Court).

Applying these precedents, we agree with the Board that respondent's actions violated Rule 8.4 (d). As discussed, the motions for mistrial in the criminal proceeding were frivolous and contrary to settled precedent. Therefore, they were contrary to "a specific statute, court rule, or procedure." *In re Spikes*, 881 A.2d at 1126 (quoting *In re Hopkins*, 677 A.2d 55, 61 (D.C. 1996)). The motions to recuse the judge were similarly unfounded. These motions directly impacted the judicial

process with respect to an identifiable case and tribunal, the criminal assault case in Superior Court in which these motions were filed. *See id.* They required responsive action from both the Superior Court and this court, as well as from the defendant. Even if, as the Hearing Committee and the Board found, respondent did not lie to the court and his actions were "heartfelt," i.e., intended to benefit his client, that does not mean, however, that they were innocuous. Unlike Rule 1.1, the purpose of Rule 8.4 is not to safeguard against harm to the client from the attorney's incompetence or failure to advocate. Rather it is to address the harm that results to the "administration of justice" more generally.

Respondent's actions did not merely "place[] an unnecessary burden on the administrative process of the courts," *In re Hallmark*, 831 A.2d 366, 375 (D.C. 2003), they tainted the judicial process in more than a *de minimis* way. *See In re Hopkins*, 677 A.2d at 61. This point is a matter of degree. Unlike in *Hallmark*, where the attorney filed one unsubstantiated voucher and then abandoned it (to her financial detriment), respondent repeatedly re-filed essentially the same motions in the hope of getting a different result, adding to the work of already burdened courts. Frivolous actions "waste the time and resources of th[e] court, delay the hearing of cases with merit and cause [opposing parties] unwarranted delay and added expense." *In re Spikes*, 881 A.2d at 1127 (noting that counsel's actions

impeded investigation and necessitated "extensive briefing of the various positions over the course of 12 months" and additional pleadings). Respondent's filings had an impact not only on the court, but on the defendant in the criminal case who was forced to respond to respondent's frivolous motions for mistrial for months after acquittal entitled her, under the Constitution, to be free of further legal entanglement with respect to the charged assault.

Respondent's filings expressly targeted the trial judge, accusing him of bias and improper *ex parte* communications and twice asking for his recusal, without any objectively reasonable basis. The legitimacy of judicial rulings derives in large measure from the judge's actual and perceived impartiality. Litigants are entitled to an impartial judge and there are rules and procedures in place to vindicate that right. Rule 2.11 (A) of the Code of Judicial Conduct requires judges to disqualify themselves from any case in which "the judge's impartiality might reasonably be questioned," whether or not a motion to disqualify is filed. *See* District of Columbia Code of Judicial Conduct Rule 2.11 (A) & cmt. [2] (2012). If a motion to recuse due to bias gives the objective appearance of being warranted, it should be granted. *See In re M.C.*, 8 A.3d at 1222 (citing *Belton v. United States*, 581 A.2d 1205, 1215 (D.C. 1990)). A recusal motion that accuses a judge of bias

or improper communications with a party is a potent weapon that must be exercised prudently.

On this record we conclude that respondent's numerous meritless, repetitive, and at times vexatious motions and other filings, considered in their totality, caused more than *de minimis* harm to the judicial process and violated Rule 8.4 (d).

## IV.    Sanction

Having concluded that respondent's conduct violated Rules 3.1 and 8.4 (d), we turn to the issue of sanction. The Board recommends a ninety-day suspension. We defer to the Board's recommendation unless it would "foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar R. XI, § 9 (h)(1).[19]  "We base our determination of sanctions upon a number of factors, such as (1) the seriousness of the conduct, (2) prejudice to the client, (3) whether the conduct involved dishonesty, (4) violation of other disciplinary rules, (5) the attorney's disciplinary history, (6) whether the attorney has acknowledged his or her wrongful conduct, and (7) mitigating

---

[19]    Bar Counsel agrees with the Board's recommended suspension. The Hearing Committee, which found no violation, recommended no sanction; a dissenting member found violations and recommended a thirty-day suspension.

circumstances." *In re Martin*, 67 A.3d at 1053 (quoting *In re Elgin*, 918 A.2d 362, 376 (D.C. 2007)).

Respondent's case presents some mitigating factors. The Board and the Hearing Committee found that respondent's conduct did not involve dishonesty toward the court and that his actions were motivated by concern for his client. The client was not harmed. Although respondent has been subject to orders from this and other courts barring him from filing motions without the court's permission, see note 22, *infra*, he has never been subject to disciplinary action or sanctioned by this court. On the other hand, respondent's unfounded and repetitive filings caused harm to the court and the defendant, and, significantly, respondent has not yet acknowledged that his conduct was wrongful. As respondent's filings in the disciplinary proceedings and before this court make clear, the type of conduct for which respondent was referred for investigation is not isolated but has continued.

Few of our original discipline cases involve conduct comparable to respondent. We have imposed a thirty-day suspension against attorneys who filed frivolous actions in violation of Rule 3.1 and Rule 8.4 (d). *See In re Spikes*, 881 A.2d at 1127-28 (filing a frivolous defamation claim based on privileged complaint to Bar Counsel indirectly interfered with Bar Counsel's ongoing ethical

investigation and burdened the court in more than a *de minimis* way); *In re Thyden*, 877 A.2d 129, 143-44 (D.C. 2005) (conduct crossed the line of zealous advocacy and unduly burdened the court, including filing an action after having been fired by client, for the benefit of others who lacked standing to bring that action). At the other extreme, we have disbarred an attorney for a course of conduct that included many other factors not present in this case including criminal and deceitful conduct, as well as failure to acknowledge the conduct as wrongful. *See In re Pelkey*, 962 A.2d at 282; *see also In re Shieh*, 738 A.2d 814, 815 (D.C. 1999) (ordering identical discipline upon attorney's disbarment in California and New York because the attorney's conduct violated Rule 8.4 (d) and the "sheer volume of respondent's abusive filings and other sanctioned behavior ma[de] synopsis of it in a few paragraphs impossible").

The Board recommends a ninety-day suspension on the ground that respondent's conduct is at least as bad as that in *In re Thyden* and *In re Spikes*. However, we imposed thirty-day suspensions in both of those cases, and basic fairness requires us to point to some significant differences between the conduct at issue in those cases and respondent's in this case to justify imposing a longer suspension here. The sheer volume of respondent's frivolous filings is one such factor. It is also significant that respondent fails to acknowledge the wrongfulness

of his conduct in persisting in the submission of meritless and unprofessional filings, both in the trial court and on appeal to this court in the criminal assault case and throughout the disciplinary proceedings, despite clear statements from all the adjudicatory bodies involved that his filings were frivolous. But the respondent in *Thyden*, who received a thirty-day suspension, also did not acknowledge that his actions violated the Rules of Professional Conduct, even though he had been personally sanctioned by the court. 877 A.2d at 143-44. As we have remarked, imposition of a sanction is not "an exact science," *id*. at 144 (quoting *In re Fair*, 780 A.2d 1106, 1115 n.24 (D.C. 2001)), and it is impossible to "match" all factors in different disciplinary cases. Still, nothing in respondent's conduct, which was undertaken not for personal gain but for the benefit of his client, merits a more severe sanction than in *Thyden* and *Spikes*. We, therefore, conclude that the Board's recommendation that respondent be suspended for ninety days is unwarranted, and instead, order a suspension of thirty days, which will begin to run for purposes of reinstatement from the time respondent files the affidavit required under D.C. Bar Rule XI, § 14.

## V. Fitness Requirement

Although we think that a thirty-day suspension is the "commensurate response" to respondent's past ethical misconduct, the purpose of a fitness

requirement—proof of rehabilitation as a condition of reinstatement—is different and forward-looking. *In re Cater*, 887 A.2d at 24; *see* D.C. Bar R. XI, § 3 (a)(2). "[T]he period of suspension that may be justified in a given case of misconduct may not be enough by itself to protect the public, the courts and the integrity of the legal profession. The more unlikely it is that the attorney will be rehabilitated by the end of the predetermined suspension term, the more the need for additional protection." *In re Cater*, 887 A.2d at 23.

A fitness requirement is imposed only when the record "contain[s] clear and convincing evidence that casts a serious doubt upon the attorney's continuing fitness to practice law." *Id.* at 24. Evidence is "clear and convincing" if it is sufficient to establish "a firm belief or conviction as to the facts sought to be established." *Id.* (quoting *In re Dortch*, 860 A.2d 346, 358 (D.C. 2004)). This is a more demanding standard than we use when considering other sanctions recommended by Bar Counsel. It is far simpler to evaluate an attorney's past acts than to project, from those past acts and the rest of the record, what that attorney will do in the future. Because this prospective inquiry is inherently speculative, we put the burden on Bar Counsel, who seeks the sanction, to present evidence that a fitness requirement should be imposed. If, after reviewing the record and considering the facts found by the Board and the Hearing Committee, we are

unsure about whether an attorney will be able to resume the ethical practice of law at the end of the period of suspension, then the standard is not met, and a fitness requirement may not be imposed. For example, some attorney misconduct is serious but isolated. It deserves sanction even absent any reason to think it will be repeated. In these cases, however, a fitness requirement is unwarranted. *See In re Guberman*, 978 A.2d 200, 212 (D.C. 2009) (finding a fitness requirement less likely to be appropriate if the misconduct "involved a response to the pressure of the moment or a situation unlikely to be repeated").

In deciding whether a fitness requirement should be imposed, we consider the same factors we use to determine whether to reinstate a disbarred attorney:

> (1) the nature and circumstances of the misconduct for which the attorney was disciplined;
>
> (2) whether the attorney recognizes the seriousness of the misconduct;
>
> (3) the attorney's conduct since discipline was imposed, including the steps taken to remedy past wrongs and prevent future ones;
>
> (4) the attorney's present character; and
>
> (5) the attorney's present qualifications and competence to practice law

*In re Cater*, 887 A.2d at 21 (citing *In re Roundtree*, 503 A.2d 1215, 1217 (D.C. 1985)).

Turning to the first factor, respondent is being disciplined for filing meritless motions for a mistrial, and for repetitive and frivolous motions that continued to defend the motion on the merits. In addition, respondent filed unfounded challenges to the impartiality of the trial judge. There is no indication that respondent recognizes the seriousness of the misconduct or even that he recognizes it as misconduct at all, the second factor we consider. This necessarily gives us pause as to respondent's likely future performance. Where we focus our attention in this case is on the third factor, respondent's more recent conduct, since the disciplinary proceedings were initiated.[20] We recognize that an attorney has a right to defend himself and we expect that most lawyers will do so vigorously, to protect their reputation and license to practice law. But even a claim of innocence does not relieve an attorney from recognizing the seriousness of the misconduct that led to disciplinary proceedings. *See In re Sabo*, 49 A.3d 1219, 1226 (D.C. 2012). Respondent has not done so. During these bar discipline proceedings respondent

---

[20] The court may consider conduct that was not before the Hearing Committee and the Board, so long as it is part of the disciplinary proceeding and proven by clear and convincing evidence. *See In re Cater*, 887 A.2d at 24-25.

has continued to file meritless submissions that attempted to remove the disciplinary proceedings to federal court (which lacked jurisdiction), sought injunctions of his interim suspension and the disciplinary proceedings from the federal court,[21] moved to vacate his interim suspension as a "legal nullity," and argued that every judge on this court should be recused from his case for bias. Respondent, in other words, is still using the same playbook that brought him into the disciplinary proceedings. He has received considerable feedback on his litigation tactics, from the trial judge, Bar Counsel, the Hearing Committee, the Board, this court, and the federal court,[22] all of it sounding the same basic refrain:

---

[21] Yelverton's complaint against Assistant Bar Counsel Fox was dismissed by the federal court under the doctrine of equitable restraint; the motion for a preliminary injunction was denied as moot. *See Yelverton*, 997 F. Supp. 2d at 2; *Younger v. Harris*, 401 U.S. 37 (1971) (setting out three-part test to determine whether federal court should defer to ongoing state court proceeding).

[22] *See Yelverton v. Senyi de Nagy-Unyom*, 2013 U.S. Dist. LEXIS 172010 (D.D.C. Nov. 27, 2013) (finding respondent ineligible for a fee waiver in his appeal of a ruling from the Bankruptcy Court). The court's order includes a history of respondent's recent litigation in federal court, and concludes that the "number, content, frequency, and disposition" of respondent's filings mark him as an abusive litigator. *Id*. at *11, *18 (citing *In re Powell*, 851 F.2d 427, 434 (D.C. Cir. 1988) (applying those four factors to distinguish vexatious and abusive litigation from mere litigiousness alone)); *see id*. at *3-4 (indicating that respondent had filed motions in that case despite being ordered not to do so without first seeking leave of the court); *id*. at *34 (citing 5:09-CV-331-FL (W.D.N.C.), *Yelverton/Webster v. Yelverton Farms, Ltd.* (Docs. 60, 120, 127) (barring respondent from filing more motions or pleadings)).

(continued . . .)

do not file baseless submissions, and do not file them over and over again. This pattern of abusive litigation is more than sufficient to produce a "serious doubt" that respondent will refrain from engaging in this type of unprofessional, unproductive, and burdensome conduct in the future. *In re Cater*, 887 A.2d at 24. His subsequent conduct during the disciplinary proceedings shows that his many filings in the criminal assault case, the basis for our findings of professional misconduct, are not isolated events relegated to the past. There is no reason to think that they are the result of momentary pressure. Rather they are part of what appears to be an ingrained pattern of litigation tactics that have plagued this and other courts, as clearly and convincingly supported by the record in this case and other cases of public record. We conclude that respondent's reinstatement to the bar of this court, following his thirty-day suspension, is conditioned on respondent

---

(. . . continued)

This order was brought to the court's attention by Bar Counsel during oral argument and in a December 12, 2013, submission offered as supplemental authority under D.C. App. R. 28 (k). Respondent has filed his own supplemental submission, citing Federal Rule of Evidence 201 for the proposition that we may not take judicial notice of the order without offering him an opportunity to be heard, because he disputes certain facts recited in the order. This court is in no position to gauge the facts in the order one way or another. However, we may refer to a judicial order entered on the public record for the undisputed fact that it has been entered and for what it provides. Ironically, respondent has himself attempted to bring to the attention of this court proceedings and orders in unrelated bankruptcy and family proceedings.

showing, by clear and convincing evidence, that he is then fit to resume the practice of law.

***

For the foregoing reasons, respondent Stephen T. Yelverton is hereby suspended from the practice of law for a period of thirty days. For purposes of reinstatement, respondent's suspension will be deemed to run from the date respondent files an affidavit in compliance with D.C. Bar Rule XI, § 14 (g). As a condition of reinstatement at the conclusion of his suspension, respondent must first establish his fitness to practice law pursuant to D.C. Bar Rule XI, § 16.

*So ordered*.