J-S37016-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: T.T., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: T.T., MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1657 EDA 2022 |

Appeal from the Order Entered May 12, 2022
In the Court of Common Pleas of Chester County Civil Division at No(s):
CP-15-DP-0000053-2008

BEFORE:  BOWES, J., LAZARUS, J., and OLSON, J.

MEMORANDUM BY LAZARUS, J.:                **FILED DECEMBER 19, 2022**

Shannon K. McDonald, Esquire (McDonald), counsel for Appellant T.T., a minor (born February 2005), appeals from the order entered in the Court of Common Pleas of Chester County.  In the order, the court granted both mothers (Parents), and Chester County Department of Children, Youth and Families (Agency), the right to intervene in an application for a private dependency action,[1] filed by McDonald on April 20, 2022, and *sua sponte*

---

[1] While the Juvenile Act provides that any person may file a dependency petition, **see** 42 Pa.C.S.A. § 6334, our Supreme Court subsequently suspended that portion of the Juvenile Act "insofar as the Act is inconsistent with Pa.R.J.C.P. 1320, 1321, and 1330, which provide that the county agency may file a petition and **any other person shall file an application** to file a petition."  **See** Pa.R.J.C.P. 1800(8) (emphasis added).  Thus, where the would-be petitioners are individuals, they must first obtain permission under Rule 1320 to file a private dependency petition.

transferred venue to Dauphin County,[2] where T.T. was in psychiatric care.[3] After our review, we quash in part and affirm in part.

T.T. was first declared dependent in 2008, when she was three years old. T.T.'s natural mother's parental rights were terminated,[4] and, in 2011, at age six, T.T. was adopted by Parents/Intervenors.[5] T.T.'s dependency case was closed, Agency custody was discharged, and court supervision was terminated. *See* Order, 7/10/12. T.T. lived with Parents in West Chester, Pennsylvania, for approximately eleven years.

In 2018, T.T. was hospitalized at Devereux Residential Facility (Devereux) for an extended period of time due to concerns for her mental health. In 2021, Devereux made a therapeutic recommendation that T.T. be

_____

[2] *See* 42 Pa.C.S.A § 6321(c)(1) ("If the child resides in a county of this Commonwealth and the proceeding is commenced in a court of another county, the court, on motion of a party or on its own motion made after the adjudicatory hearing or at any time prior to final disposition, may transfer the proceeding to the county of the residence of the child for further action.").

[3] T.T. has an extensive history of mental health treatment, having attempted suicide at age 6. *See* Application for Leave to File Private Dependency Petition, 4/20/22, at ¶ 9. At the time McDonald filed the application, T.T. was in a medically necessary Community Residential Rehabilitation (CRR) host home, with a foster mother. At the CRR host home, T.T. was doing well, attending school daily, taking medications, participating in all recommended therapy and medication management appointments, and progressing socially. *Id.* at ¶ 18-19.

[4] T.T.'s natural father's whereabouts were unknown.

[5] Parents also adopted T.T.'s natural brother at age three.

discharged to a mental health CRR host home, and on December 7, 2021 T.T. entered the CRR host home.

On April 20, 2022, McDonald petitioned for leave to file an application for a private dependency petition pursuant to Pa.R.J.C.P. 1320, 1321, and 1330.[6] In her petition, McDonald averred Parents were neglecting and obstructing T.T.'s healthcare and education matters, that McDonald had contacted Chester County Mental Health Department in February 2021 because Devereux was trying to discharge T.T. and Parents would not consent to T.T. coming home, and that T.T. had expressed to McDonald that she did not feel safe at Parents' home. **See** Application for Leave to File Private Dependency Petition, 4/20/22, at ¶¶ 12-16.[7]

Both the Agency and Parents filed petitions to intervene. The court scheduled a hearing for May 3, 2022. Following the hearing, which occurred

---

[6] Rules 1320 and 1321 of the Pennsylvania Rules of Juvenile Court Procedure govern the procedural requirements for filing an application to file a private dependency petition and require the court hold a hearing within fourteen days of the filing of the application. **See** Pa.R.J.C.P. 1320, 1321. Rule 1330 governs the procedure and requirements for the filing of the dependency petition. **See** Pa.R.J.C.P. 1330 If the application is granted, "the county agency shall be joined as a party in any further proceedings upon filing and service of a private petition pursuant to Rules 1330 and 1331." Pa.R.C.J.P. 1321(C).

[7] Parents dispute the factual averments in McDonald's application and proposed dependency petition. **See** Appellees'/Parents' Brief, at 3.

on May 5, 2022, the court granted Parents' and Agency's petitions to intervene and transferred the case to Dauphin County.[8]

McDonald filed this appeal. She raises the following issues for our review:

1. Did the trial court err in allowing [P]arents to intervene in the application proceedings?

2. Did the trial court err in allowing the [Agency] to intervene in the application proceedings?

3. Did the trial court err in finding venue appropriate in Dauphin County and transferring the application to file a dependency petition, and therefore the dependency action itself, to Dauphin County?

4. Did the trial court err in allowing [P]arents, who had not been made [parties] to the matter, to object to a hearing officer hearing the matter, thereby delaying the matter beyond the 14-day period required for the application hearing?

Appellant's Brief, at 11 (reordered for ease of disposition).

In her first two issues, McDonald challenges the court's decision to allow Parents and the Agency to intervene. An order granting intervention in an ongoing dispute is an interlocutory order and cannot be immediately appealed without permission. *See Step Plan Servs., Inc. v. Koresko*, 12 A.3d 401, 417 n.4 (Pa. Super. 2010) (citations omitted); 20 West's Pa. Practice,

---

[8] At the hearing, the Honorable Bret Binder first considered the motions to intervene filed by the Agency and Parents, noting that neither the parties nor the court was aware of case law with respect to intervention at the application stage. *See* N.T. Hearing, 5/5/22, at 7, 10, 25. To clarify, here, the trial court granted both Parents' and the Agency's petitions to intervene in the application stage; no court has yet ruled on the application to file a private dependency petition.

Appellate Practice § 312:30 (2017); *see also Beltan v. Piersody*, 748 A.2d 715, 718-19 (Pa. Super. 2000) (holding order granting intervenor status in ongoing child custody case was interlocutory and unappealable); *In re Manley*, 451 A.2d 557, 559 (Pa. Super. 1982) (order granting intervention is interlocutory and unappealable). Pursuant to Pa.R.A.P. 341, an order denying intervention may be appealable as a collateral order under Pa.R.A.P. 313. McDonald, however, has made no claim or argument with respect to appealability. *Cf. In re J.S.*, 980 A.2d 1172 (Pa. Super. 2009) (where court granted foster parents' petition to intervene, Mother and agency appealed, asserting order was appealable as collateral order).

We conclude, therefore, that the court's order granting Parents' and the Agency's petitions to intervene is interlocutory and not appealable.[9] Thus, we quash that portion of the appeal.

Next, McDonald argues the court erred in finding venue appropriate in Dauphin County and transferring the application to file a dependency petition

---

[9] A collateral order is defined as "an order [1] separable from and collateral to the main cause of action [2] where the right involved is too important to be denied review and [3] the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). In this case, even assuming that the first and second prongs of Rule 313 are met, McDonald cannot satisfy the third prong of the collateral order doctrine—that the requested remedy sought by McDonald (permission to file an application for a private dependency petition) would be lost if review of the order is postponed. From our review of the record, the trial court's order merely allowed Parents and the Agency to participate in the hearing on McDonald's application to file a private dependency petition, which will ultimately be held before the Dauphin County Court. *See* N.T. Hearing, *supra* at 15, 25.

to Dauphin County. *See* Pa.R.A.P. 311(c) ("An appeal may be taken as of right from an order in a civil action or proceeding changing venue, transferring the matter to another court of coordinate jurisdiction, or declining to proceed in the matter on the basis of *forum non conveniens* or analogous principles.").

Our standard of review in this matter is as follows:

> A court's decision to exercise or decline jurisdiction is subject to an abuse of discretion standard of review and will not be disturbed absent an abuse of that discretion. Under Pennsylvania law, an abuse of discretion occurs when the court has overridden or misapplied the law, when its judgment is manifestly unreasonable, or when there is insufficient evidence of record to support the court's findings. An abuse of discretion requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures.

*J.K. v. W.L.K.*, 102 A.3d 511, 513 (Pa. Super. 2014), quoting *Lucas v. Lucas*, 882 A.2d 523, 527 (Pa. Super. 2005). "Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record." *V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa. Super. 2012).

A dependency action may be commenced in the county in which the child resides, *see* 42 Pa.C.S.A. § 6321(b)(1), or, if dependency is alleged, in the county in which the child is present when it is commenced. *See* 42 Pa.C.S.A. § 6321(b)(3). Further, the statute provides that "the [juvenile c]ourt may transfer proceedings to the county a child resides in on motion of a party or on its own motion made after the adjudicatory hearing or at any time prior to final disposition" *Id.* at § 6321(c)(1).

Section 6321(c) of the Juvenile Act provides:

**(c) Transfer to another court within this Commonwealth**.—

(1)   If the child resides in a county of this Commonwealth and the proceeding is commenced in a court of another county, the court, on motion of a party or on its own motion made after the adjudicatory hearing or at any time prior to final disposition, may transfer the proceeding to the county of the residence of the child for further action.  Like transfers may be made if the residence of the child changes during the proceeding.  The proceeding may be transferred if the child has been adjudicated delinquent and other proceedings involving the child are pending in the court of the county of his residence.

42 Pa.C.S.A. § 6321(c).  **See also** Pa.R.J.C.P. 1300 ("A dependency proceeding shall be commenced in: (1) the county in which the child is present; or (2) the child's county of residence.").

In **In Interest of J.S.M.**, 514 A.2d 899 (Pa. Super. 1986), this Court addressed the issue of inter-county transfer in a dependency action, stating that the term "residence" was not specifically defined for use in the Juvenile Act, and thus, construed the term "according to its common and approved usage." **Id.** at 900, (citing Statutory Construction Act of December 6, 1972, P.L. 1339, No. 290, § 3; 1 Pa.C.S.A. § 1903 and **Commonwealth v. Roberson**, 444 A.2d 722 (Pa. Super. 1982)).  In **J.S.M.**, "residence" was defined as: "Personal presence at some place of abode with no present intention of definite and early removal and with purpose to remain for undetermined period, not infrequently, but not necessarily combined with design to stay permanently." **J.S.M.**, **supra** at 900 (quoting Black's Law

Dictionary 1176 (rev. 5th ed. 1979)).[10]  There, for the purpose of transferring custody and jurisdiction of a minor child from York County to Lancaster County, we determined that  since the agency failed to show the minor child had formerly resided in Lancaster County, based on undisputed testimony showing minor had resided in York County for at least four months prior to the date the transfer hearing was conducted, jurisdiction was proper in York County.  *Id.*  However, as this Court subsequently acknowledged in *In re G.B.*, 530 A.2d 496 (Pa. Super. 1987), *J.S.M.* should not be read to mean that "child's `residence' is the only factor in determining which county should bear responsibility for the child[,] and must, ultimately depend on a determination of how to serve the best interests of the dependent child." *G.B.*, 530 A.2d at 498.

Here, there is no dispute that T.T. has resided in Dauphin County since December 7, 2021, and has indicated that she would like to remain in the CRR home in Dauphin County.  McDonald argues "all records relating to [T.T.] are in Chester County" and "it [] is in the best interests of [T.T.] to have the matter heard in Chester County."  Appellant's Brief, at 20.  McDonald's

---

[10]  In the most recent edition of Black's Law Dictionary, "residence" is defined as, "bodily presence as an inhabitant in a given place." Black's Law Dictionary 1176 (rev. 11th ed. 2019).  "Residence" is compared and distinguished from "domicile" in the following manner: "Residence usu[ally] just means bodily presence as an inhabitant in a given place; domicile usu[ally] requires bodily presence plus an intention to make the place one's home.  A person thus may have more than one residence at a time but only one domicile.  Sometimes, though, the two terms are used synonymously." *Id.*

argument regarding records is not convincing. T.T.'s educational and medical records can be transferred to Dauphin County. Further, McDonald's argument that it is in T.T.'s best interest to have the matter heard in Chester County is unsupported. As the trial court stated at the hearing, the court's consideration was "best interest of the child." N.T. Hearing, ***supra*** at 38. In particular, the court stated it was "most concerned about treatment moving forward." ***Id.***

The questions here are where venue properly lies **and** where T.T.'s best interests can best be served. ***See In re G.B.***, ***supra***; ***see also In re C.B.***, 861 A.2d 287, 295 (Pa. Super. 2004) ("The amendments to the Pennsylvania Juvenile Act[, 42 Pa.C.S.A. §§ 6301-6365,] prompted by the federal Adoption and Safe Families Act (ASFA)[11] make clear that the health and safety of the child supersede all other considerations."). Here, McDonald acknowledges that Parents would not consent to T.T. returning home, that T.T. has expressed to McDonald that she does not feel safe at home, and, most significantly, that T.T. is making progress at her CRR home in Dauphin County.[12] Both the Agency and Parents agree that the court properly

---

[11] 42 U.S.C. § 671 *et seq*.

[12] As the Agency points out, prior to October 1, 2020, a court had authority to transfer a dependency case to another county "at any time." Pa.R.J.C.P. 1302, rescinded and replaced April 28 2020, effective October 1, 2020. The new language provides:

**Rule 1302. Intercounty Transfer**

*(Footnote Continued Next Page)*

transferred venue, noting that T.T. has resided in the same therapeutically-recommended CRR host home in Dauphin County for four consecutive months immediately prior to the  fling of the application, T.T. continues to attend school and participate in therapy and medication management in the CRR host home, T.T.'s school and treatment resources are located in Dauphin County, and T.T., who will be eighteen years old in a matter of months, appears to have no intent to leave her residence in Dauphin County. ***See*** Appellee/Agency Brief, at 7; Appellees/Parents' Brief, at 10-11.

We are satisfied that the trial court did not abuse its discretion in concluding that venue properly lies in Dauphin County and that T.T.'s best interests will be served by a transfer of jurisdiction to Dauphin County. ***See*** 42 Pa.C.S.A. § 6321; Pa.R.J.C.P. 1300. ***See also J.K.***, ***supra***.

In her final issue, McDonald claims the court erred in holding a hearing on her application to file a private dependency petition on day 15, which Parents requested, when the rule requires a hearing be held "within 14 days." ***See*** Pa.R.J.C.P. 1321.  This claim of error is waived.  McDonald made no

---

**A. Best Interest of the Child.**  Any time after the adjudicatory hearing, upon motion of a party or court, a court may consider the transfer of a case to another county **if the transfer is best suited to the safety, protection, and physical, mental, and moral welfare of the child.**

Pa.R.J.C.P. 1302A (emphasis added).  Though the procedural posture in the instant case is distinct from that contemplated by the rule, the best interest of the child remains, nonetheless, the foremost concern throughout dependency proceedings.

objection at the hearing but, rather, raised this claim for the first time in her Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). *See also Davis v. Woxall Hotel, Inc.*, 577 A.2d 636, 639 n.3 (Pa. Super. 1990) (citing *Commercial Credit Corp. v. Cacciatiore*, 495 A.2d 540, 543 (Pa. Super. 1985) ("A party cannot rectify the failure to preserve an issue by proffering it in response to a Rule 1925(b) order."). Moreover, McDonald has failed to establish that she or T.T. were prejudiced by the one-day delay. We find no error.

Appeal quashed in part. Order affirmed in part. The Dauphin County Court shall proceed accordingly.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/19/2022